IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HIGHLAND SUPPLY CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 05-883-GPM |
| | ) |
| TECNOLOGIA DE COMMUNICACIONES | ) |
| AVANZADAS, S.A. DE C.V., d/b/a | ) |
| BORDERCOMM, and BORDERCOMM | ) |
| PARTNERS, L.P., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter came before the Court on cross motions for summary judgment (Docs. 35, 41), and the Court heard arguments from counsel on December 19, 2007. For the reasons set forth below, Plaintiff's motion for summary judgment is granted, and Defendant's motion for summary judgment is denied.

## BACKGROUND

Plaintiff Highland Supply Corporation ("Highland") is a supplier of various products in the floral industry. Defendant Tecnologia de Communicaciones Avanzadas, S.A. de C.V. ("TCA") owns the concessions to certain wireless spectrum in Mexico and provides wireless communications to companies transacting business across the Mexican border.[1]

---

[1] Defendant Bordercomm Partners, L.P. ("Bordercomm"), provides point-to-point digital wireless communications both within the United States and between Mexico and the United States. Bordercomm was dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii) on

The facts, as the Court set forth in its Memorandum and Order on September 7, 2006 (*see* Doc. 24), are as follows:

> On or about January 5, 2004, HSC [Highland] and TCA entered into a Digital Wireless Service Agreement (the "First Agreement") wherein TCA agreed to provide cross border digital wireless communications between a data center located in Brownsville, Texas, and facilities operated by HSC in Matamoroes, Mexico. On or about August 20, 2004, HSC and TCA entered into a second Digital Wireless Service Agreement (the "Second Agreement") wherein TCA agreed to provide digital wireless communications between two HSC facilities in Los Indios, Texas, and Estacion, Mexico. The First Agreement was attached to HSC's Purchase Order No. 108087 as an exhibit and sent back to TCA. The Second Agreement was attached to HSC's Purchase Order No. 110134 and sent back to TCA. Purchase Order Nos. 108087 and 110134 contained a condition, which stated,
>
>> In the event [HSC] is not satisfied for any reason with the wireless services and any other services ordered with this Purchase Order and Digital Wireless Service Agreement then [HSC] may in its sole discretion in writing only cancel the Purchase Order and Digital Wireless Service Agreement and owe to [TCA] only the monthly charge prorated to the date of the written notice of cancellation. This additional term and condition supercedes any other provision on the reverse side or any other place that may conflict.
>
> On or about December 1, 2005, HSC sent a notice of cancellation to TCA, cancelling Purchase Order Nos. 108087 and 110134 . A dispute arose concerning the terms of the contract, and TCA informed HSC that it would consider the December 1st cancellation to be a breach of the contract, and it would seek damages against HSC.
>
> As a result of TCA's threats, HSC filed a complaint against TCA and Bordercomm with this Court on December 16, 2005, seeking declaratory judgment as a remedy to the current controversy. (*See* Doc. 1).

---

July 10, 2006 (*see* Doc. 14). Without Bordercomm as a party, the Court found diversity jurisdiction to exist (*see* Doc. 24). Highland is a citizen of Illinois, TCA is a Mexican corporation, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

## ANALYSIS

Because Highland's action is for declaratory judgment under 28 U.S.C. § 2201(a), Highland bears the burden of showing the existence of an actual controversy to establish subject matter jurisdiction. *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993). *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937) (an actual controversy must be present before a declaratory judgment action is ripe for adjudication). The actual controversy must be "definite and concrete," touching the legal relations of parties which have adverse legal interests. *Id.* at 242. If a declaratory judgment would settle an actual controversy and afford relief from uncertainty, insecurity, or delay regarding a party's legal rights, the action is not subject to dismissal. *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987).

Here, the Court finds that there is an actual and substantial controversy between the parties concerning Highland's right to cancel the contracts pursuant to the terms of the purchase orders. The Court notes that TCA has admitted that it considers the cancellations to be a breach of the contracts which entitles it to damages. (*See, e.g.*, Doc. 26, paras. 10-11). For this reason, the Court has jurisdiction to settle this dispute and provide relief.

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must review the entire record and draw all reasonable inferences in the light most favorable to the non-moving party. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Enquip, Inc. v.*

*Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981).

There is no dispute about the validity of the agreements or the meaning of their terms. In other words, the contracts before the Court are valid and unambiguous. There is likewise no genuine dispute over whether the language contained in the purchase order is part of each agreement. This matter was addressed at the hearing on the motion to dismiss, and it has never been contested.

The parties to these agreements are sophisticated business entities; it appears the agreements were reached following arm's-length negotiations. Sophisticated business entities make their own bargains every day, and they are held to the terms of their agreements. *See, e.g. M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972) (a choice "made in an arm's length negotiation by experienced and sophisticated businessmen . . . absent some compelling and countervailing reason . . . should be honored by the parties and enforced by the courts."). Moreover, TCA has admitted that the agreements, including the purchase orders, are valid and enforceable. (*See* Doc. 36-2, Answer to Interrogatory Nos. 3 and 4).

The issue is simply whether Highland had a right to cancel the two contracts. Highland argues that the express terms of the contracts allow it in its sole discretion to cancel if it is dissatisfied for any reason and owe only the monthly charges prorated to the date of cancellation. TCA, on the other hand, argues that Highland's termination was wrongful because it was only seeking to obtain a better price for the services. TCA also argues that Highland failed to properly cancel the first agreement and prevented TCA from providing services under the second agreement.

The language of each agreement is clear: "in the event [Highland] is not satisfied *for any reason* with the wireless services and any other services ordered with this Purchase Order and Digital Wireless Service Agreement then [Highland] may in its sole discretion in writing only cancel

the Purchase Order and Digital Wireless Service Agreement and owe to [TCA] only the monthly charge prorated to the date of the written notice of cancellation." (Doc. 3, pp. 6, 13, emphasis added). The parties agreed to this term but now, faced with its effect, TCA seeks to avoid it.

TCA relies on *Greer Properties, Inc. v. LaSalle National Bank*, 874 F.2d 457 (7th Cir. 1989), to support its argument that Highland's termination was in bad faith. In *Greer*, the sellers agreed to sell a commercial tract of land for $1,250,000. The contract contained a provision that obligated the sellers to have an environmental study of the land conducted. It also gave the sellers an option to terminate the contract if the cost of environment cleanup work, in the sellers' best judgment, would be economically impracticable. When the final report on the cleanup costs was received by the sellers, the sellers formally terminated the contract by sending written notice to the buyer. Before doing so, however, the sellers entered into negotiations with a different buyer for a higher purchase price.

The buyer argued that the termination was in bad faith because the sellers did so only in order to sell the property to a different buyer. The district court found that the contract gave the sellers broad discretion to terminate the contract upon receipt of the environmental cleanup estimate and granted summary judgment to the sellers. The Seventh Circuit reversed, finding that issues of material fact precluded summary judgment.

In Illinois, "every contract implies good faith and fair dealing between the parties to it." *Greer*, 874 F.2d at 460 *(citing Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 690 (Ill. 1958); *Spircoff v. Spircoff*, 392 N.E.2d 363, 369 (Ill. App. Ct. 1979); *Rao v. Rao*, 718 F.2d 219, 222 (7th Cir. 1983)). "This implied obligation of good faith and fair dealing in the performance of contracts acts as a limit on the discretion possessed by the parties." *Greer*, 874 F.2d at 460. In other words, "a

party vested with contractual discretion must exercise his discretion reasonably and may not do so arbitrarily or capriciously." *Id. (citing Foster Enterprises, Inc. v. Germania Fed. Savings and Loan Ass'n*, 421 N.E.2d 1375, 1381 (Ill. App. Ct. 1981)).

In this case, there is no evidence of bad faith or arbitrary and capricious conduct by Highland. While it is true the Highland sought a better price from TCA after the agreement was entered, the express terms of the contract required TCA to meet the price of legitimate competition. (*See* Amended Complaint, Attachment 1, para. 7). Other reasons for the termination were offered by Highland, including power outages and lack of reliability of the wireless circuit created by the first agreement. (*See* Deposition of William F. Straeter, Doc. 42-2). This case is unlike *Greer* in that the termination clause is very broad, allowing Highland to cancel if it is unsatisfied *for any reason*. The contract in *Greer* only gave the sellers one out: if the cost of environmental cleanup became economically impracticable.

The Court also finds no merit in TCA's argument that Highland failed to properly terminate the first agreement. TCA admits it received the notices, but it challenges the wording of the correspondence sent from Chris Dickshot to Jaime Martinez on December 1, 2005 (*see* Doc. 46-3). According to TCA, this written notice terminated only the wireless circuit and not the contract itself. (*See* Doc. 40, Attachment 1, Exhibit C). While it is true that Mr. Dickshot's December 1, 2005, correspondence terminates the "wireless circuit," it specifically references the purchase order. Moreover, the wireless circuit was created by the contract (including the purchase order) which are at issue in this action, and it was in operation. As Highland points out in its reply, the first agreement had been consummated, and the wireless circuit was up and running. Highland wanted to terminate the circuit, and because the parties entered into the contract for the sole purpose of

creating the wireless circuit, termination of the circuit necessarily terminates the entire contract. The parties understood this at the time Mr. Dickshot's correspondence was received (*see* Doc. 46-3, Declaration of Chris Dickshot).

Finally, the Court attributes no significance to the fact that services were never provided under the second agreement. Highland has not claimed that it was dissatisfied with the services provided under this agreement. Again, the agreement gave Highland the right to cancel for any reason, absent bad faith.

"Unless pacts are enforced according to their terms, the institution of contract, with all the advantages private negotiation and agreement brings, is jeopardized." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990) *(citing Travelers Ins. Co. v. Budget Rent-a-Car Systems, Inc.*, 901 F.2d 765 (9th Cir. 1990)). In the absence of bad faith, Highland was entitled to enforce its agreement to the letter, "even to the great discomfort" of TCA. *Id.* As Judge Easterbrook stated in *Kham*, the obligation of good faith "is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document." *Id.* "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Id.*

## Conclusion

For the foregoing reasons, Highland's motion for summary judgment (Doc. 35) is **GRANTED**, and TCA's motion for summary judgment (Doc. 41) is **DENIED**. The Court finds that Highland properly canceled the contracts pursuant to their terms, and TCA is not entitled to damages for breach of contract. Highland shall pay to TCA the monthly charges prorated to the date of

cancellation. Highland is awarded its costs.

The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 2/11/08

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge